**ZEMCO MANUFACTURING, INC.,**
**Appellant–Plaintiff,**

v.

**Joel R. PECORARO, Sr.,**
**Appellee–Defendant.**

No. 02A03–9802–CV–69.

Court of Appeals of Indiana.

Dec. 11, 1998.

William D. Swift, Swift & Finlayson, Fort Wayne, for appellant-plaintiff.

Gene R. Leeuw, John M. Mead, Leeuw & Doyle, P.C., Indianapolis, for appellee-defendant.

## OPINION

ROBB, Judge.

Zemco Manufacturing, Inc. ("Zemco") appeals the trial court's grant of Joel Pecoraro's ("Pecoraro") motion for judgment on the

evidence in its action against Pecoraro arising out of the sale of Pecoraro's interest in Zemco. We reverse and remand.

### Issues

Zemco raises the following restated and reordered issues for our review:

1. Whether the trial court erred in excluding evidence regarding previous litigation between the parties;

2. Whether the trial court erred in excluding Zemco's proffered expert testimony regarding "transactions in the ordinary course of business"; and

3. Whether the trial court erred in granting Pecoraro's motion for judgment on the evidence.

### Facts and Procedural History [1]

Beginning in 1980, Pecoraro and Alan Zemen ("Zemen") were directors, officers, and equal shareholders in Zemco.[2] Throughout their association, Pecoraro acted as president and Zemen as vice-president of the corporation. A dispute in 1994 led Zemen to sue Pecoraro and Zemco. The judge in that case (hereinafter referred to as the "Zemen case") confirmed in a written order the parties' stipulation that "until further order of the Court ... there will be no transactions out of the ordinary course of business...." Exhibit 22, R. 473. In response to Zemen's Application for Preliminary Injunction, the judge in the Zemen case continued the previous order that the parties not engage in any transactions out of the ordinary course of business during pendency of the action, and further ordered that during the pendency of the action, no bonuses or other shares of the business profits should be distributed unless approved by both parties. Exhibit 23, R. 474.

The Zemen case culminated in a settlement agreement (the "Zemen settlement") reached as a result of mediation. The Zemen settlement provided a procedure by which one party would buy the entire business interest of the other. One party (the

---

1. Oral argument was held in Indianapolis on November 4, 1998.

2. Pecoraro and Zemen were also directors, officers, and equal shareholders in several other businesses which are not parties to this litigation.

"Proposer") would propose in writing the terms under which he was willing to either buy or sell his interest, and the other party (the "Designator") would designate whether he wished to be the buyer or the seller under the proposal, but could not vary any term of the proposal. The relevant provisions of the Zemen settlement are as follows:

It is the intent of the parties that this [settlement] be specifically enforceable by a court of competent jurisdiction.

. . .

Activity in the lawsuit presently pending between the parties . . . will be suspended for so long as both parties are proceeding in accordance with the terms of this [settlement]. . . . The Order of the Court entered July 26, 1994, shall remain in effect while the parties are proceeding in accordance with the terms of this [settlement]. In addition, neither party will take any action, without the written consent of the other, to cause any of the business entities to increase the amount of compensation currently paid to any officer, employee or agent. After closing in accordance with this [settlement], the lawsuit shall be dismissed with prejudice.

. . .

At closing in accordance with this [settlement], each party shall deliver to the other a release of claims, including all aspects of the ownership and management of the four business entities, except that said release will not extend to any claims arising out of distributions (exclusive of reimbursements for expenses incurred) made by any of the businesses, during the period from July 1, 1994 to closing, to either party in which the other did not share equally.

Exhibit 3, R. 272.

Pecoraro was entitled under the Zemen settlement to declare his intention to be either the Proposer or the Designator, and he chose to be the Proposer. His proposal, titled "Liquidation and Redemption Agreement" (the "Agreement"), included as exhibits all documents necessary to complete the transaction. The Agreement contained the following provisions relevant to our decision:

Pecoraro and Zemen are each fifty percent (50%) shareholders of Zemco, Summit and ZMI. Pecoraro and Zemen are also equal partners in Apex Leasing, an Indiana general partnership ("Apex"). A deadlock exists between Pecoraro and Zemen over the governance and operation of the various entities. A lawsuit brought by Zemen against Pecoraro and the business entities threatened to cause the dissolution of these entities. In order to resolve the deadlock, and to settle the litigation, Pecoraro and Zemen have entered into that certain Agreement, dated January 6, 1995, (the "Settlement Agreement") pursuant to which Pecoraro has established the conditions of the sale and purchase of Seller's ownership interests in Zemco, Summit, ZMI and Apex, and Zemen has been designated as the Buyer and Pecoraro the Seller. . . . This Agreement shall establish all of the terms and conditions by which Seller shall sell and Buyer shall affect the purchase of all of Seller's interests in the above-referenced entities.

NOW, THEREFORE, in accordance with the provisions of the Settlement Agreement, the parties to this Agreement agree as follows:

. . .

*Section 2.06.   Release of Claims and Obligations.*  On the Closing Date, the parties hereto shall execute and deliver releases in the forms set out in Exhibits 2.06(a) through 2.06(d) hereto.

. . .

*Section 2.08.   Compensation Until Closing Date.*  Seller shall continue to receive his current salary and all fringe benefits during the period from the date of designation of the Seller until the Closing Date. . . .

. . .

*Section 3.02.   Representations and Warranties of Buyer.*  Buyer represents and warrants that:

a. *Authority for Transaction.*  The execution, delivery and performance by Zemco, Summit and ZMI, respectively, of this agreement and the consummation by Zemco, Summit and ZMI, respectively of the transactions contemplated hereby have been duly authorized by all

necessary action on the part of the respective entities. . . .

. . .

*Section 5.01. Damages.* Any party breaching any representation, warranty, covenant or other agreement contained in this Agreement shall be liable for such consequential and other damages as may be suffered by any other party hereto, including, but not limited to, attorney fees.

. . .

*Section 6.04. Entire Agreement; Modifications.* This Agreement (including the exhibits and schedules hereto) constitute the entire Agreement among the parties hereto with respect to the subject matter hereof and supersede all prior Agreements, understandings, representations, warranties, negotiations, and discussions, whether oral or written, of the parties, and there are no agreements or commitments among the parties except as set forth herein. . . .

. . .

*Section 6.09. Enforcement of this Agreement.* Parties to this Agreement shall be entitled to the specific enforcement of this Agreement in a court of competent jurisdiction.

*Section 6.10. Amendment.* This Agreement may only be amended by the parties hereto by a written instrument signed by each of the parties hereto.

Exhibit 4, R.279.

Zemen chose to be the buyer according to the terms of Pecoraro's proposal and executed the Agreement on January 30, 1995, both individually and in his capacity as an officer and director of Zemco. Closing was set for February 23, 1995. On the day of closing, Zemen found on his desk a check drawn on Zemco's account made out to him in the amount of $138,000.00 designated as a "dividend for yearend tax planning." Exhibit 5, R. 292. Zemen learned that Pecoraro had drawn $150,000.00 on Zemco's line of credit to cover a check in a similar amount Pecoraro wrote to himself. No dividend had been

agreed to, and Zemco had never before issued a dividend directly to the shareholders for tax purposes. Zemen voided the check made out to him and tried to stop payment on the check made out to Pecoraro, but Pecoraro's check had already been cashed.

Pecoraro's attorney attended the closing, but Pecoraro did not. Pecoraro had already signed the closing documents. Zemen signed the documents at the closing, but altered the Mutual Release (the "Release") between Zemco and Pecoraro from the form originally attached to Pecoraro's proposal before signing on behalf of Zemco. The Release as attached to the Agreement and as presented to Zemen for signature at closing provided, in pertinent part, as follows:

. . . Zemco Mfr., Inc. and Joel R. Pecoraro . . . do each hereby release and discharge the other . . . from any and all actions . . . which either of them . . . ever had, or now or hereafter can, shall or may have, against the other for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Release arising out of or in any way connected with Pecoraro's actions, inactions, duties or status as an employee, officer, director or partner in Zemco Mfr., Inc. . . . . PROVIDED, however, that in the event that Alan W. Zemen is the "Buyer" under [this Agreement], nothing in this Release shall be construed as releasing any claim that Alan W. Zemen may have arising out of any inequality in the amount of salary, bonuses or distributions actually paid by Zemco, Summit, ZMI or Apex to Joel R. Pecoraro and Alan W. Zemen during the period from July 1, 1994 to the date hereof.

Exhibit 6, R.302. Zemen inserted a clause immediately following the quoted language that Pecoraro was not released from "any claim for the $138,000.00 withdrawn from Zemco by Pecoraro on or about February 21, 1995."[3] Exhibit 6, R. 302. Pecoraro's attorney took the documents to Pecoraro and never returned to the closing. Nothing

---

**3.** Zemen also inserted a clause that Pecoraro was not released from "any issues relating to the note from Pecoraro and Zemen to Fort Wayne National Bank in the original principal amount of

$400,000.00." Pecoraro subsequently paid his half of this obligation, and the substance of this clause is not disputed.

further was heard from Pecoraro or his attorney. At the close of the business day, Zemen delivered a cashier's check for the purchase price, and Pecoraro deposited the check. The pending lawsuit was dismissed.

Following the closing, Zemen discovered that, on the day of closing, Pecoraro had written checks in the total amount of $15,-870.00 from Zemco funds as "vacation pay" to himself and four others who were also leaving Zemco to work with Pecoraro. According to Zemco's records, none of the five were entitled to vacation pay. Zemen further learned that while the closing was pending, Pecoraro had issued a Zemco check in the amount of $4,450.00 to pay his personal country club dues.

Zemco then initiated the instant lawsuit against Pecoraro seeking damages for conversion and imposition of a constructive trust for those amounts which Pecoraro had unilaterally withdrawn from the business. Pecoraro asserted as an affirmative defense that the attempted modification of the Release was a breach of the Agreement, that he was therefore entitled to have the Release executed in exactly the form presented, and that the Release as presented released him from any liability for the acts complained of. The trial court granted Pecoraro's motion in limine, ordering Zemco to "refrain from discussing or eliciting testimony on the substance of the pleadings and orders in [the Zemen case] during the course of this trial." R. 135.

The case was tried to a jury. At trial, Zemco offered but was not allowed to introduce into evidence the injunction issued in the Zemen case and the Zemen settlement. At the close of Zemco's evidence, Pecoraro moved for judgment on the evidence, and said motion was granted. Zemco now appeals.

*Discussion and Decision*

I. Evidentiary Rulings

A. Zemen case documents

■ Zemco claims that the trial court erred in refusing to admit evidence regarding the Zemen case. Zemco specifically complains of excluding the trial court's orders in the Zemen case and the Zemen settlement which resulted from mediation. Pecoraro responds that the Agreement superseded any prior agreement and solely governs the parties' rights and obligations and that admitting evidence regarding the Zemen case in the instant case would be allowing Zemco to relitigate the issues settled by the Agreement.

■ The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Faulkner v. Markkay of Indiana, Inc.*, 663 N.E.2d 798, 800 (Ind.Ct.App.1996), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances. *Id.* Moreover, erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.*

The trial judge herein found that evidence regarding the Zemen case was not relevant to the issues in the current case and therefore excluded Zemco's offered evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Relevant evidence is generally admissible, unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid. R. 402, 403.

The Agreement which is at the heart of the instant litigation is a direct result of the Zemen case. The documents sought to be introduced by Zemco included the trial court's orders in the Zemen case and the Zemen settlement reached during mediation. The orders set the parameters for the parties' conduct until dismissal of that case, which did not occur until *after* the closing of the sale of Pecoraro's interest in Zemco. The Zemen settlement which set in motion the drafting and execution of the Agreement expressly incorporated the trial court's orders. The Agreement was drafted and executed in accordance with the Zemen settle-

ment and specifically referred to the Zemen settlement. Although the Agreement contains language that it constitutes the entire agreement between the parties and that there are no other agreements except as set forth therein, the orders of the court governing the parties' conduct were not an agreement between them but an obligation imposed upon them, and the Zemen settlement was the basic framework with which the Agreement was required to comply. The underlying documents tended to prove the parties' understanding of the terms of the Agreement and the conduct expected of them pending the closing of the deal. They also tended to show why Zemco felt justified in offering to modify the Release prior to closing.

Excluding the evidence regarding the Zemen case was clearly erroneous. Viewing Zemco's claims only in terms of the Agreement does not accurately portray the context in which the claims arose. Zemco's case is based upon conduct which allegedly failed to comport with the parameters of the parties' deal, and therefore, those parameters are material to Zemco's case. The trial court erred in not allowing Zemco to introduce the Zemen case documents.

### B. Expert testimony

■ Zemco also complains of the trial court's exclusion of its offered "expert" testimony with regard to whether Pecoraro's payment to himself of $138,000.00 of Zemco's funds as a dividend for tax purposes two days prior to closing on the sale of his entire interest in the company was a transaction in the ordinary course of business. Vincent Tippman, a local businessman and also a friend of Zemen's, was asked what "a transaction in the ordinary course of business mean[s] to you?" R. 386. Pecoraro objected and the trial court sustained the objection. Zemco also offered the testimony of William Federspiel, the controller of Tippman's companies who had assisted Zemen in ascertaining the financial condition of Zemco prior to execution of the Agreement. Zemco asked Federspiel "[w]hat is, in your opinion, a transaction in the ordinary course of business," r. 448, and specifically whether "a dividend is a payment in the ordinary course of business?" R. 413. Pecoraro objected to each question, and the objections were sustained.

■ Although the parties characterize Tippman and Federspiel's offered testimony as expert opinion testimony, the record does not reveal that Zemco established the need for scientific, technical or other specialized knowledge to assist the trier of fact. *See* Evid. R. 702(a). We think the testimony of Tippman and Federspiel is more properly designated as opinion testimony by a lay witness. Whether it is characterized as opinion testimony by an expert or lay witness, however, the determination of whether a tendered witness is qualified to give an opinion is a matter within the discretion of the trial court. *Matter of Adoption of L.C.,* 650 N.E.2d 726, 733 (Ind.Ct.App.1995), *trans. denied, cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996) (expert opinion testimony); *Kent v. State,* 675 N.E.2d 332, 338 (Ind.1996) (lay witness opinion testimony). We will reverse the decision of the trial court only for an abuse of that discretion. *Randolph County Hosp. v. Livingston,* 650 N.E.2d 1215, 1219 (Ind.Ct.App.1995), *trans. denied.*

Tippman and Federspiel were both asked to give their opinion of a transaction in the ordinary course of business in a generic sense. Zemco was attempting to establish that Pecoraro's declaration of a dividend was outside the ordinary course of business. Zemen had already testified that Zemco had never before declared a dividend for tax purposes. Tax liabilities were paid either through payroll deductions or through payments directly to the Internal Revenue Service or the Indiana Department of Revenue, never directly to the shareholders. Tippman and Federspiel were, at best, only peripherally involved in Zemco's business. Given the circumstances of this case, in which the parties had been ordered not to engage unilaterally in any transaction out of the ordinary course of business, we cannot say that the trial court abused its discretion in ruling that the only relevant inquiry was what was in the ordinary course for *Zemco's* business, a question which Tippman and Federspiel had not been shown qualified to answer.

## II. Judgment on the Evidence

■ The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1282–83 (Ind.Ct.App. 1996). Where all or some of the issues in a case tried before a jury are not supported by sufficient evidence, the court shall withdraw such issues from the jury and enter judgment thereon. Ind. Trial Rule 50(A). The granting or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Salcedo v. Toepp*, 696 N.E.2d 426, 432 (Ind.Ct.App. 1998). On appeal, we apply the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370, 1372 (Ind.Ct.App.1998), *trans. denied.* We consider the evidence in the light most favorable to the non-moving party. *Id.* Judgment on the evidence may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.*

In ruling on Pecoraro's motion for judgment on the evidence, the trial judge stated:

I start with the premise, as I consider the motion for judgment on the evidence, that this was a significant, one million dollar transaction between businessmen who, at the time, could not have reasonably trusted each other to any appreciable extent, and I move on to the fact that there were clear, written requirements of what the structure and documentation of the transaction was to be, and there were to be no changes. I also believe that there was a reasonable opportunity on the part of the buyers of the Plaintiff Zemco and an imperative on their part, under the circumstances, to exhaustively investigate the financial health of the corporations that they were purchasing until closing with the possible exception of vacation pay that was paid on the day of closing. I am also mindful that there was a merger clause in the Liquidation and Redemption Agreement which superseded the prior Mediation Settlement terms, and I am especially mindful of the fact that the buyers went to closing with actual knowledge of the one hundred and thirty-eight thousand dollar checks that Mr. Pecoraro had drawn on corporate funds prior to closing. At closing, there was a decision to execute the Releases in the form of an offer to modify the terms; an offer of which I find, as a matter of law, was not accepted by Mr. Pecoraro. There was also, at closing, a decision to tender the one million dollar purchase price despite conduct which I find, as a matter of law, did not constitute Pecoraro's acceptance of Mr. Zemen's offer to modify the terms of the Release. There was also, at closing, a decision to tender the one million dollar purchase price without any known restrictive endorsement on that check.... I will therefore grant the motion for judgment on the evidence.... [4]

R. 502–504.

■ Zemco asserts that it put forth sufficient credible evidence from which the jury could have found that Pecoraro accepted its offer to modify the release and therefore erred in granting Pecoraro's motion for judgment on the evidence. Pecoraro responds that the Agreement and all attachments thereto became binding upon execution of the Agreement on January 30, 1995, and controlled all subsequent actions of the parties. Pecoraro therefore asserts that the Release covered the complained-of conduct because it, too, became binding on January 30, 1995. He further responds that he did not accept Zemco's offer to modify the Release, that Zemco's attempted alteration of the Release constituted a breach of the Agreement, and that he was entitled to have the Release executed as written.

4. Zemco had also asserted a claim for $6,495.70 of Zemco funds which Pecoraro had used to pay his personal attorney fees. The trial court entered judgment on the evidence as to all claims but the attorney fees, reserving for the jury the sole issue of whether Pecoraro's use of Zemco funds to pay those fees constituted conversion. Ultimately however, even that issue was never submitted to the jury, as Pecoraro admitted liability for those fees and Zemco accepted his offer of judgment in that amount.

The trial court found, and Zemco concedes, that the alterations Zemen made to the Release on behalf of Zemco were an offer to modify its terms. Release documents are to be interpreted in the same manner as any other contract document, with the intention of the parties governing. *Huffman v. Monroe County Comm. School Corp.*, 588 N.E.2d 1264, 1267 (Ind.1992). Modification of a release, because it is also a contract, requires all the requisite elements of a contract, including an offer, acceptance, and consideration. *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 630 (Ind.Ct.App.1992), *trans. denied.* Questions regarding the modification of a contract are ones of fact, and are to be determined by the trier of fact upon the evidence of the case. *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 221 (Ind.Ct.App. 1987).

Zemco acknowledged at oral argument that had Pecoraro not acted in a manner Zemen felt was inconsistent with the parameters of their deal after the Agreement was signed but prior to closing, Zemco would have had no right to refuse to sign the Release as presented or to offer to modify the terms of the Release or any other closing document. Whether Pecoraro's pre-closing conduct constituted a breach entitling Zemco to modify the contract was a question of fact, *see Anderson v. Horizon Homes, Inc.*, 644 N.E.2d 1281, 1290 (Ind.Ct.App.1995), *trans. denied,* a question which the jury could have considered had the underlying documents been admitted into evidence. Moreover, whether Pecoraro's actions in accepting and cashing the check for the purchase price after seeing the modified Release constituted acceptance of Zemco's offer to modify was also a question of fact which the jury should have been allowed to decide. The trial court abused its discretion in deciding as a matter of law that Pecoraro did not accept Zemco's offer to modify the terms of the Release and granting Pecoraro's motion for judgment on the evidence.

### Conclusion

The trial court erred in excluding evidence regarding the Zemen case from Zemco's case in chief, but did not err in excluding Zemco's proffered "expert" testimony. The trial court also erred by granting Pecoraro's motion for judgment on the evidence. We therefore reverse and remand to the trial court for further proceedings.

Reversed and remanded.

KIRSCH and STATON, JJ., concur.