**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Apr 20 2012, 8:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT–
CROSS-APPELLEE:

**WILLIAM JANES**
**ELIZABETH A. FLYNN**
Michigan City, Indiana

ATTORNEY FOR APPELLEE–
CROSS-APPELLANT:

**GEORGE R. LIVARCHIK**
Livarchik & Farahmand
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD E. WHITE,                                     )
                                                     )
    Appellant–Cross-Appellee–Petitioner,        )
                                                     )
        vs.                                    )    No. 64A04-1104-DR-230
                                                     )
SUSAN A. WHITE,                                      )
                                                     )
    Appellee–Cross-Appellant–Respondent.        )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
The Honorable James A. Johnson, Magistrate
Cause No. 64D01-0708-DR-7690

**April 20, 2012**

**MEMORANDUM DECISION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant–Cross-Appellee–Petitioner Donald E. White ("Husband") appeals from the trial court's disposition of the marital estate following its dissolution of his marriage to Appellee–Cross-Appellant–Respondent Susan A. White ("Wife"). Husband contends that the trial court incorrectly (1) ordered an unequal division of the marital estate in Wife's favor, (2) awarded Wife spousal maintenance due to disability, (3) valued a stock option that Husband held, and (4) failed to credit him with certain payments made during the provisional period. Wife cross-appeals, contending that the trial court incorrectly excluded a deposition from Husband's former mistress. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on September 29, 1990, and during the course of their marriage had no children. At the time, Husband was twenty-five and Wife was twenty-seven, with a ten-year-old daughter from a previous marriage. Neither party owned any property of substantial value. Husband leased a car, owned some furniture, and had perhaps a "couple hundred" dollars in the bank. Tr. p. 247. Wife owned a car, owned some furniture, and also had perhaps a "couple hundred" dollars in the bank. Tr. p. 247. At the time, Husband was employed as a financial advisor and Wife as a certified nursing assistant. During the marriage, Wife packed Husband's lunches and prepared 80% of the meals; did 80% of the yard work; and did 100% of the grocery shopping, laundry, cleaning, window washing, painting, and staining. The couple's finances, over which Husband always had complete control, improved considerably over the years.

2

On August 21, 2007, Husband filed a dissolution petition. By then, Husband had become an Ameriprise Financial franchisee. As of August 24, 2007, the Ameriprise practice had a value of $604,000, of which $123,000 was attributed to enterprise goodwill and thus included in the marital estate, valued overall at $1,045,150.00. In 2008, Husband earned $197,337.00 from his practice through December 16, and in 2007, Husband earned $236,158.00. In 2007 and 2008, Wife had gross yearly wages of $9806 and $10,806, respectively, earned from her part-time position as a teacher's aide for special-needs students. After the marital residence was sold in May of 2008, Wife moved into her daughter's condominium.

On August 22, 2007, the day after Husband filed his dissolution petition, Wife was diagnosed with a brain aneurysm. Brain aneurysms run in Wife's family and had killed her older sister. Additional testing soon revealed a second aneurysm, and although Wife underwent a "coiling" procedure in the hopes of avoiding invasive brain surgery, the procedure was unsuccessful. On December 10, 2007, Wife underwent invasive brain surgery to repair her aneurysms. While recovering from the second procedure, Wife experienced heart problems, and her doctor installed a defibrillator in her chest.

As of late July 2009, Wife continued to have problems with short-term memory loss, headaches, and swelling on the right side of her brain. Wife's memory loss had adversely affected her work, as she often could not remember students' names, the teacher's assignments, or dates and numbers. Additionally, Wife, who holds a GED, was reluctant to spend money to return to school for fear that she would not be able to retain what she had learned. In order for Wife to remember things around the house, such as

3

when to take medications and in what dosage, everything had to be written down. Wife used to be an avid reader, but on at least one occasion threw a book down in frustration because she could not comprehend it. As of July 28, 2009, Wife's condition had generated $13,182.13 in out-of-pocket medical expenses that Husband paid.

Meanwhile, in a financial disclosure dated August 24, 2007, Husband failed to disclose options for 8054 shares of American Express stock and that he owned the Ameriprise franchise, as opposed to being a mere employee. Husband only revealed the existence of the stock options after A.P., a woman with whom he was having a romantic relationship, threatened to tell Wife about them. Had Husband exercised the stock options on August 24, 2007, they would have generated a $177,655.13 profit. By July of 2009, due to reductions in stock values, the stock options had an effective value of zero. Husband also failed to disclose that he had made a $50,000.00 personal loan to friend Brett Martin.

The trial court held a hearing on the dissolution petition on July 28 and 29, 2009. On November 8, 2010, the trial court issued its "Findings of Fact, Conclusions of Law, and Proposed Dissolution Decree." The trial court concluded, inter alia, that Wife was entitled to 60% of the marital estate, $25,000 in attorney's fees, and $8355.48 in costs. The trial court's division of assets reads as follows:

> 86. [Husband] is awarded the following assets reflecting approximately 40% of the net marital estate as follows:

| ASSET | FMV |
| --- | --- |
| (1) Ameriprise Financial franchise/practice Enterprise Goodwill | $123,000.00 |
| (2) 8054 American Express stock option (option continues through 2-25-11) | $177,655.00 |

4

| | | |
|---|---|---|
| (3) | Baldwin, Michigan lake cottage | $160,000.00 |
| (4) | U.S. Savings Bonds | $13,000.00 |
| (5) | 2000 Mercedes | $11,830.00 |
| (6) | 2003 Harley-Davidson motorcycle | $13,231.00 |
| (7) | 2006 Pontoon Boat | $7,000.00 |
| (8) | Hyde drift boat and trailer | $5,000.00 |
| (9) | Ameriprise Financial accounts | $71,419.00 |
| (10) | Brett Martin loan | $50,000.00 |

| | |
|---|---|
| **GROSS ASSETS** | **$632,225.00** |
| Less debt-Baldwin lake cottage 9-29-08 mtg bal | - 115,290.00 |
| Net Equity (w/o judgment) | $516,395.00 |
| Less judgment payable to [Wife] over 15 years [Wife] | - 98,785.00 Cash to |
| Net Equity to [Husband] | $481,060.00 (40%) |

87. [Wife] is awarded the following assets reflecting approximately 60% of the net marital estate as follows:

| | ASSETS | FMV |
|---|---|---|
| (1) | Proceeds from sale of the marital home | $166,498.00 |
| (2) | Centier Bank accounts | $20,679.00 |
| (3) | 2002 Nissan Xterra | $8,148.00 |
| (4) | Wife's PERF account | $1,773.00 |
| (5) | From the Ameriprise Financial account | $331,207.00 |
| (6) | Cash from [Husband] | [$]98,785.00 |
| | Net to [Wife] | $627,090.00 (60%) |

88. The cash from [Husband] to [Wife] is a money judgment bearing statutory interest of 8% per annum from this date. It is a judgment lien to be secured by mortgage and/or similar device against [Husband]'s Ameriprise Financial Advisor practice and franchise and Baldwin, Michigan, real estate.

Appellant's App. pp. 29-31. Among the findings made by the trial court was that "It is undisputed that [Husband] intentionally failed to disclose his stock option for 8054 shares of American Express stock until after [A.P.] threatened to reveal the concealed asset to [Wife]." Appellant's App. p. 18. Additionally, the trial court ordered that Husband pay Wife spousal maintenance in the form of maintaining her health insurance at the same level it existed at the time he filed the dissolution petition.

**DISCUSSION AND DECISION**

When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind. Ct. App. 2002). The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839-40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. This court neither reweighs the evidence nor assesses the credibility of witnesses, but considers only the evidence most favorable to the judgment. *Id.*

*Husband's Appeal Issues*

**I. Whether the Trial Court Abused its Discretion in
Ordering an Unequal Division of the Marital Estate**

Indiana Code section 31-15-7-5 (2007) provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
    (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
    (2) The extent to which the property was acquired by each spouse:
        (A) before the marriage; or
        (B) through inheritance or gift.
    (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

"Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id*. (citations, quotation marks, and brackets omitted).

Husband contends only that the trial court abused its discretion in finding that the dissipation/disposition factor of Indiana Code section 31-15-7-5 weighed "heavily in [Wife]'s favor, and rebuts the presumptive equal division." Appellant's App. p. 27. We need not address Husband's contention, however, as Husband does not challenge the trial court's determination that the relative economic situations of the parties also weighed heavily in Wife's favor. Given the massive disparity in earnings and earning potential that exists, we conclude that an uneven division of the martial estate is fully justified,

with or without a finding of dissipation.  Any error the trial court may have made in this regard can only be considered harmless.

## II.  Whether the Trial Court Abused its
## Discretion in Ordering Spousal Maintenance

Indiana Code section 31-15-7-2 (2007) provides, in relevant part, as follows:

A court may make the following findings concerning maintenance:
> (1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

We have stated the following regarding review of spousal maintenance awarded due to physical or mental incapacitation:

> The trial court has discretionary power to award maintenance.  Our review, as in other cases involving the exercise of discretion, is limited to the question of whether the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  ….  Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable under the facts of each case.  ….  [T]he [maintenance] statute does not require a spouse to be completely bedfast or totally disabled before he or she can successfully claim maintenance.  Rather than establishing a minimal percentage of disability, the statute creates a flexible standard which allows a trial court to consider whether any incapacity significantly affects a spouse's ability to support h[er]self.  ….  [T]he fact that a spouse is able to perform some job or even that she is currently employed does not necessarily make maintenance inappropriate.

*In re Marriage of Dillman*, 478 N.E.2d 86, 87-88 (Ind. Ct. App. 1985) (citations omitted and interpreting predecessor to Indiana Code section 31-15-7-2).

As previously mentioned, Wife underwent invasive brain surgery to repair two aneurysms.  Afterward, Wife had problems with short-term memory loss, headaches, and

8

swelling on the right side of her brain. Wife's memory loss had adversely affected her work, as she often could not remember students' names, the teacher's assignments, or dates and numbers. Wife was reluctant to spend money to return to school for fear that she would not be able to retain what she had learned. In order for Wife to remember things around the house, such as when to take medications and in what dosage, everything had to be written down. Wife used to be an avid reader, but on at least one occasion threw a book down in frustration because she could not comprehend it.

We have little trouble concluding that the evidence supports a finding that Wife's condition significantly and adversely affects her ability to support herself. It goes almost without saying that short-term memory issues such as the ones testified to by Wife would adversely affect performance in almost any job. Moreover, Wife's medical issues are precisely the type that would seriously impede any attempt at further education. Husband notes that evidence regarding Wife's medical condition consisted only of her testimony and that of one of her long-time friends, suggesting that such self-serving testimony is not sufficient to support the trial court's finding. This is merely an invitation to reweigh the evidence, one that we decline.

Husband draws our attention to *Matzat v. Matzat*, 854 N.E.2d 918 (Ind. Ct. App. 2006), a case in which we reversed a trial court's grant of incapacity maintenance. *Id.* at 921. *Matzat*, however, is readily distinguishable. In that case, the wife testified that she had back problems that affected her ability to work and that she was seeking social security benefits. *Id.* at 919. The trial court subsequently awarded the wife $200 per week and insurance in maintenance. *Id.* Husband filed a motion to correct error,

9

proffering as evidence the denial of wife's request for social security benefits, which motion the trial court denied. *Id.* In addition to the fact of the denial, the documents proffered showed that wife was seeking benefits "'because … severe depression and medication ha[d] caused stomach cramps and bloating.'" *Id.*

We reversed the trial court's refusal to admit husband's proffer of evidence and its denial of his motion to correct error. In doing so, we noted that husband's "tendered documents showed that [wife]'s testimony as to her medical condition—the only evidence supporting the maintenance award—was, at the least, misleading, and, at the worst, an act of fraud on the court." *Id.* at 920. Here, however, there is no evidence, much less seemingly credible documentary evidence issued by a governmental agency, tending to undermine Wife's testimony in the least. In the absence of such evidence, we will not question the trial court's evaluation of Wife's testimony.

### III. Whether the Trial Court Abused its Discretion in Valuing Husband's Stock Option

Husband argues that the trial court abused its discretion in assessing the value of his stock options as of the date of the filing of the petition. As previously mentioned, the stock options were not exercised on that date and had an effective value of zero on the date of the dissolution order. As the Indiana Supreme Court has made clear, "the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution petition and the date of the hearing." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). Under the circumstances of this case, any error the trial court might have made in this regard can only be considered harmless. As previously mentioned,

10

there exists a massive disparity in earning potential between the parties. Given this disparity and Wife's disability, the division of assets that the trial court listed in the order is fully justified.

### IV. Whether the Trial Court Abused its Discretion in Failing to Credit Husband for Certain Provisional Payments

Husband contends that the trial court abused its discretion in failing to credit him with various payments made during the provisional period.

> A trial court has discretion to determine whether it will give a party credit in the final division of property for temporary support and maintenance paid during the proceedings. *Rodgers v. Rodgers*, 503 N.E.2d 1255, 1258 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*. We will disturb its decision only for an abuse of that discretion. *Id.*
> ….
> Ind. Code § 31-15-4-8 permits the trial court to "issue an order for temporary maintenance or support in such amounts and on such terms that are just and proper." While such order shall not "prejudice … the rights of the parties … as adjudicated at the final hearing in the proceedings," Ind. Code § 31-15-4-13, the trial court has discretion to determine how to treat the temporary maintenance at the final distribution. *Rodgers*, 503 N.E.2d at 1258. Accordingly, we have held that a trial court did not abuse its discretion when it accounted for the temporary maintenance in the final distribution, *Fiste v. Fiste*, 627 N.E.2d 1368, 1372 (Ind. Ct. App. 1994) (disapproved on other grounds by *Moyars v. Moyars*, 717 N.E.2d 976, 979 n.2 (Ind. Ct. App. 1999), *trans. denied*), but we have also held that a trial court did not abuse its discretion when it refused to credit temporary support payments against a final distribution. *Rodgers*, 503 N.E.2d at 1258.

*Bojrab v. Bojrab*, 786 N.E.2d 713, 724-25 (Ind. Ct. App. 2003) *transfer granted, opinion vacated sub nom. In Marriage of Bojrab*, 804 N.E.2d 747 (Ind. 2003) *and opinion aff'd in part, vacated in part*, 810 N.E.2d 1008 (Ind. 2004).

Husband contends that he should have been credited with several items paid during the provisional period. As previously mentioned, Husband paid $13,182.13 of

Wife's uninsured medical expenses during the provisional period. Husband also paid $13,779.55 into a SEP IRA account that was subsequently awarded to Wife, made $3052.01 in payments on the loan for the Michigan cottage, and deposited $57,376.33 into a joint account to which Wife had access and from which Wife made withdrawals. We find ourselves, however, unable to evaluate Husband's arguments. At no point in the trial court's twenty-six-page dissolution order are there any findings or conclusions relating to Husband's claims regarding the provisional payments. In the absence of indication that the trial court considered Husband's claims, or, if it did, any basis for its disposition of them, we cannot say if the trial court abused its discretion in this regard.

*Wife's Appeal Issue*

**V. Whether the Trial Court Abused its Discretion in not Admitting A.P.'s Deposition into Evidence**

Wife raises one cross-appeal issue, in which she argues that the trial court abused its discretion in refusing to admit A.P.'s deposition.

> Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Zemco Mfg., Inc. v. Pecoraro*, 703 N.E.2d 1064, 1069 (Ind. Ct. App. 1998), *trans. denied*. We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id*. Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id*. Further, any error in the admission of evidence is harmless if the same or similar evidence is submitted without objection. *Homehealth, Inc. v. N. Ind. Pub. Serv. Co.*, 600 N.E.2d 970, 974 (Ind. Ct. App. 1992), *reh'g denied*.

*R.R. Donnelley & Sons Co. v. N. Tx. Steel Co., Inc.*, 752 N.E.2d 112, 126-27 (Ind. Ct. App. 2001), *trans. denied*.

Wife contends that A.P.'s deposition should have been admitted as relevant to the question of whether Husband intentionally failed to disclose the existence of assets from Wife. Any error the trial court may have made in this regard can only be considered harmless. As previously mentioned, the trial court found that Husband intentionally failed to disclose assets, a finding for which there was ample support in the record without A.P.'s deposition. As such, the deposition would have been cumulative on the question, and its exclusion was therefore harmless, even if erroneous. *See Spaulding v. Harris*, 914 N.E.2d 820, 830 (Ind. Ct. App. 2009) ("Where wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error."), *trans. denied.*

## CONCLUSION

We conclude that the trial court did not abuse its discretion in ordering an unequal division of the marital estate and in ordering that disability maintenance be paid to Wife. Moreover, we conclude that any error that the trial court may have made in including the value of the stock options in the marital estate and assigning that value to Husband was harmless. Furthermore, the record is not adequate for us to determine whether the trial court considered certain provisional payments made by Husband or to review its disposition of them if it did. We remand for further consideration and fact-finding, if necessary, regarding those payments. Finally, any error the trial court may have made in excluding A.P.'s deposition can only be considered harmless.

We affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.

13

KIRSCH, J., and BARNES, J., concur.