Sherman Randy **MORTON** and Rhonda **Morton,** Appellants–Plaintiffs,

v.

John A. **MOSS,** M.D., Appellee–Defendant.

No. 48A02–9701–CV–41.

Court of Appeals of Indiana.

May 8, 1998.

Richard Walker, Anderson, for Appellants–Plaintiffs.

Todd J. Kaiser, Locke Reynolds Boyd & Weisell, Indianapolis, Thomas G. Godfrey, Anderson, for Appellee–Defendant.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Sherman and Rhonda Morton (the Mortons) appeal the trial court's grant of appellee-defendant Dr. John Moss's motion for judgment on the evidence made at the close of Morton's case-in-chief in a medical malpractice action brought by the Mortons against Dr. Moss. Specifically, the Mortons claim that the trial court erred in determining that they failed to present sufficient evidence to show that Dr. Moss was the proximate cause of Sherman Morton's injuries.

Dr. Moss cross appeals, contending that the trial court erred in refusing to grant his motion for summary judgment. Specifically, Dr. Moss claims that the Mortons' failure to designate evidence and oppose the motion for summary judgment in a timely fashion entitled him to judgment as a matter of law.

### FACTS

The facts most favorable to the Mortons reveal that Sherman Morton began smoking cigarettes when he was twelve years old. During the 1970's, Morton smoked nearly four packs per day, and has suffered from sinus problems and strained breathing for years.

On January 21, 1991, Morton made an appointment to see Dr. Moss, an otolaryngologist,[1] after discovering blood in his "expectorated" body fluids when he spat or coughed. During this appointment, Morton explained his symptoms, and Dr. Moss diagnosed him with nasal polyps. Dr. Moss prescribed some medication for Morton on that day and on two subsequent occasions.

In August of 1991, Morton continued to experience blood in his expectorated fluids and elected to undergo outpatient surgery for the nasal polyps by Dr. Moss on August 29, 1991. At subsequent appointments on September 6, and 17, 1991, Morton told Dr.

Moss that he was continuing to bleed. Dr. Moss told Morton during both of these visits that the bleeding was a normal part of the surgical healing process.

In January, 1992, Morton developed a sore throat, an earache and a knot on the side of his neck. While Dr. Moss was unable to see Morton again until nearly one month later, his staff told Morton to contact his family physician, Dr. Scott Green. Following an examination on January 21, 1992, Dr. Green prescribed antibiotics for Morton and told him to make another appointment so he could determine the source of his continued bleeding. Instead, Morton visited Dr. Moss on February 4, 1992, complaining of a sore throat, bleeding, an earache and a lump on the side of his throat. During that appointment, Dr. Moss informed Morton that an infection was present which had largely resolved itself. Dr. Moss prescribed several medications and further recommended that Morton not undergo any additional surgical procedures. Following the visit on February 4, Morton began to feel better until late July or early August, 1992, when he began to experience pain and difficulty in opening his mouth.

On August 25, 1992, Morton returned to see Dr. Moss who prescribed additional antibiotics. Dr. Moss also recommended that Morton have his tonsils removed because they were infected, and instructed Morton to return for an appointment to schedule surgery. When Dr. Moss examined Morton on September 9, 1992, Morton reported that his symptoms had worsened. Dr. Moss again recommended that Morton undergo a tonsillectomy, and he performed the surgery on October 1, 1992. Following the surgery, Dr. Moss diagnosed Morton with a very advanced cancer of the left tonsil. Dr. Moss informed Morton that any subsequent surgery to remove the cancer would involve a substantial loss of tissue, and therefore recommended that Morton undergo radiation treatment. Morton followed Dr. Moss' recommendation and underwent radiation treatment for approximately six weeks. As Morton's condition worsened, Dr. Moss and other consulting physicians suggested that Morton

---

1. An otolaryngologist is a physician who specializes in the treatment of the ear, nose and throat.

undergo radical neck surgery. This subsequent surgery entailed the removal of a significant portion of Morton's facial and neck tissue, including a large portion of the jaw bone and tongue. This surgery was performed in March of 1993.

Following this surgery, the Mortons filed a complaint against Dr. Moss with the medical review panel, which recommended that the case should proceed to trial on the issue of liability. On December 27, 1994,[2] the Mortons filed a complaint against Dr. Moss for medical malpractice.

On July 12, 1996, Dr. Moss filed a motion for summary judgment, alleging that the Mortons had failed to present any evidence on the issue of proximate cause. In support of his motion, Dr. Moss designated certain evidence to the trial court, including an affidavit in which he indicated that Morton's cancer did not develop before August of 1992, and therefore his care and treatment of Morton was not the cause of Morton's injuries. Dr. Moss also offered portions of Dr. Thomas McSoley's deposition, which established that Morton did not develop cancer until August of 1992. The Mortons did not oppose Dr. Moss' evidence.

On August 28, 1996, the trial court conducted a hearing on Dr. Moss' summary judgment motion. At that hearing, Morton attempted to orally designate evidence in opposition to the summary judgment motion, and Dr. Moss successfully moved to strike this attempted designation as untimely. Despite Dr. Moss' request for a ruling on the motion for summary judgment, the trial court refused, and ordered the case to proceed to trial. The trial court also denied Dr. Moss' request that the trial be continued until a ruling was made on the summary judgment motion.

A jury trial commenced on September 18, 1996, during which Dr. Daniel Berner testified that Morton did not have cancer on February 4, 1992, and that it developed sometime in the summer of 1992. Dr. Berner also testified that he believed the injuries

from which Morton suffered were the result of the cancer treatment and not Dr. Moss' negligent practices. R. at 44–49. Dr. Berner then concluded that Dr. Moss had timely diagnosed Morton and properly treated him. Dr. Green, Morton's family practitioner, also testified that he had no opinion as to whether Dr. Moss breached any standard of care or caused any injury to Morton.

Following the Mortons' case in chief, Dr. Moss moved for a judgment on the evidence, alleging that Morton failed to present sufficient expert testimony to show that Dr. Moss' negligent acts were the proximate cause of Morton's injuries. The trial court granted the motion and instructed Dr. Moss to prepare findings of fact and conclusions of law. Morton now appeals the grant of Dr. Moss' motion for judgment on the evidence. Dr. Moss cross appeals, contending that the trial court erred in refusing to grant his motion for summary judgment.

## DISCUSSION AND DECISION

### I. Denial Of Summary Judgment As Cross-Error

Initially, we note that we need not address Morton's contention regarding the grant of Dr. Moss' motion for judgment on the evidence, because we conclude that Dr. Moss' cross appeal is dispositive. While the Mortons contend that we are limited to a review of the trial court's decision in granting the motion for judgment on the evidence, we observe that Dr. Moss' cross appeal of the denial of summary judgment is permitted under Ind. Trial Rule 59(G) which provides in relevant part as follows:

> **Cross Errors.** [I]f a praecipe rather than a motion to correct error is filed by a party in the trial court, the opposing party may raise any grounds as cross-errors and also may raise any reasons to affirm the judgment directly in the appellate brief ... [3]

In addition to the provisions of T.R. 59(G), this court has determined that a party may appeal from the denial of a motion for summary judgment following entry of a final

---

**2.** The Mortons filed an amended complaint on April 23, 1996. Record at 18.

**3.** Neither party filed a motion to correct error. The Mortons filed a praecipe with the trial court

on October 24, 1996, R. at 1, and Dr. Moss filed a cross-praecipe for purposes of his cross-appeal on October 28, 1996. R. at 13.

judgment or order. *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App.1996), *trans. denied; see also* T.R. 56(E).

■ In the instant case, the record reveals that the trial court simply refused to rule on Dr. Moss' unopposed motion for summary judgment when requested to do so,[4] and denied a request for a continuance of the trial. Supplemental Record at 59–60. As a consequence of the trial court's implicit denial of Dr. Moss' summary judgment motion, Dr. Moss was compelled to proceed to trial. Because Dr. Moss has raised the propriety of the trial court's denial of his motion for summary judgment on cross appeal following the entry of a final judgment, we conclude that Dr. Moss' issue regarding the denial of his motion for summary judgment is properly before this court. *Id.; Keith,* 661 N.E.2d at 35. We must now determine whether the trial court erred in denying Dr. Moss' motion for summary judgment.

### II. Dr. Moss' Entitlement To Summary Judgment

#### A. Standard Of Review

When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1065 (Ind. Ct.App.1995), *trans. denied.* We resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Id.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Government, Inc.,* 683 N.E.2d 622, 625 (Ind.Ct.App. 1997), *trans. denied.* A fact is material for the purpose of ruling on a motion for sum-

mary judgment only when its existence facilitates resolution of any of the issues involved. *Havert v. Caldwell,* 452 N.E.2d 154, 157 (Ind. 1983). Even if there is a conflict in the facts and inferences on some elements of a claim, summary judgment is appropriate when there is no dispute with regard to facts which are dispositive of the litigation. *Ford v. Madison–Grant Teachers Ass'n,* 675 N.E.2d 734, 736 (Ind.Ct.App.1997), *trans. denied.* The party appealing the denial of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery,* 609 N.E.2d 1104, 1107 (Ind.1993).

#### B. Failure to Designate Evidence

■ As stated above, the Mortons designated no evidence in response to Dr. Moss' motion for summary judgment. T.R. 56(C) requires an adverse party to respond to a motion for summary judgment within thirty days by either: "(1) filing affidavits showing issues of material fact, (2) filing his own affidavit indicating why the facts necessary to justify his opposition are unavailable, or (3) requesting an extension of time in which to file his response." *Seufert v. RWB Medical,* 649 N.E.2d 1070, 1073 (Ind.Ct.App.1995). If the non-movant fails to properly respond or designate evidence within the thirty-day time period set forth in T.R. 56, and the moving party has shown that he is entitled to summary judgment, then summary judgment must be entered against the non-moving party. *Cloverleaf Apartments, Inc. v. Eaton,* 641 N.E.2d 665, 667 (Ind.Ct.App.1994). A party may not wait until the summary judgment hearing to oppose the motion. *Seufert,* 649 N.E.2d at 1073.

In the instant case, the Mortons did not respond to Dr. Moss' motion for summary judgment before the allotted thirty days had expired, and they made no request for an extension of time to respond. Rather, on the day of the summary judgment hearing, the Mortons attempted to orally designate evi-

---

4. At the summary judgment hearing, the trial court made the following statement after Dr. Moss requested a ruling on the motion:

> I understand the argument, but if, if you need for me to say out loud I'm not prepared to rule on that at this time, I'll be glad to say that out loud. The problem is there are more things happening in this court than your case, and I

> simply am not comfortable with the level of my ability to research that

> Well, I think the record clearly reflects that you asked for a ruling, and I clearly said you're not going to get it.

Supplemental Record at 59–60.

dence. S.R. at 52. Because the Mortons failed to properly respond, the trial court was obligated to grant Dr. Moss' motion if the designated evidence warranted an entry of summary judgment. *Cloverleaf,* 641 N.E.2d at 667.

In a medical malpractice action, this court has determined that, when a defendant provides expert medical testimony establishing that the defendant's conduct did not cause the plaintiff's condition, it is incumbent upon the plaintiff to come forward with expert medical testimony to rebut the lack of causation and demonstrate the existence of a genuine issue as to causation. *Malooley v. McIntyre,* 597 N.E.2d 314, 317 (Ind.Ct.App. 1992). *See also Simms v. Schweikher,* 651 N.E.2d 348, 350 (Ind.Ct.App.1995), *trans. denied* (affidavit of physician stating that his conduct during surgery was within the standard of care required the plaintiff to come forward with expert testimony in opposition to that evidence).

█ In the instant case, Dr. Moss filed his motion for summary judgment and designated evidence with the trial court on July 12, 1996, claiming that he was entitled to summary judgment because the Mortons could not establish that Dr. Moss was liable for Morton's injuries. In support of his motion, Dr. Moss designated his own affidavit in which he stated that his care and treatment was not a factor in the injuries complained of by the Mortons, that Morton's cancer did not develop until August of 1992, and that it could not have been diagnosed any sooner than August of 1992. S.R. at 23–24. Dr. Moss also submitted portions of the deposition of Dr. McSoley, a member of the medical review panel in this case, who testified that although Morton displayed the signs and symptoms of tonsillitis on February 4, 1992, S.R. at 35, there was no evidence that Morton had cancer on September 6, 1991 or on February 4, 1992. S.R. at 37, 38. Dr. McSoley also testified that he could only be certain that Morton had cancer in August of 1992. S.R. at 38.

The evidence designated by Dr. Moss in support of his motion for summary judgment was sufficient to show that the cancer could not have been diagnosed sooner as alleged by the Mortons. As a result, Dr. Moss' affidavit and Dr. McSoley's testimony were sufficient

to require the Mortons to present expert testimony on the issue of proximate cause. *Id.* The Mortons did not respond to the motion for summary judgment in a timely fashion, and they failed to offer any evidence in opposition to Dr. Moss' designated evidence establishing that his treatment or conduct did not cause the injuries of which they complained. As a result, the trial court should have entered summary judgment in favor of Dr. Moss. Therefore, the trial court erred in refusing to grant Dr. Moss' motion for summary judgment.

### CONCLUSION

In light of our resolution of the issues set forth above, we conclude that Dr. Moss was entitled to assert, on cross-appeal, that the trial court erred in denying his motion for summary judgment. We further note that, because the Mortons failed to present any evidence to rebut Dr. Moss' designated evidence establishing that he was not the cause of Morton's condition, the trial court erred in refusing to grant Dr. Moss' motion for summary judgment. However, because the trial court entered a final judgment for Dr. Moss as a result of his motion for judgment on the evidence, we do not now disturb that judgment.

Judgment affirmed.

NAJAM and RILEY, JJ., concur.