Wendy **FRANKLIN**, as Guardian for A.F., Appellant/Cross–Appellee–Plaintiff,

v.

Lisa Clark **BENOCK**, Board of Commissioners of Knox County, and Citizens Bank, Appellees/Cross–Appellants–Defendants.

No. 42A04–9902–CV–83.

Court of Appeals of Indiana.

Jan. 28, 2000.

Rehearing Denied March 27, 2000.

Jon R. Pactor, Indianapolis, Indiana, Attorney for Appellant/Cross–Appellee.

Terry G. Farmer, Laura A. Scott, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, Indiana, Attorneys for Appellee/Cross–Appellant Citizens Bank.

## OPINION

BROOK, Judge.

### Case Summary[1]

Appellant/cross-appellee-plaintiff Wendy Franklin ("Wendy"), as guardian for her minor daughter A.F. ("A.F."),[2] appeals the trial court's judgment in favor of appellee/cross-appellant-defendant Citizens Bank ("Citizens" or "the Bank") on her negligence claim. On cross-appeal, Citizens appeals from the trial court's denial of its motion for summary judgment. We reverse and remand for entry of summary judgment in favor of Citizens.

### Issues

One issue is dispositive of our review, namely, whether the trial court erred in denying Citizens' motion for summary judgment.

### Facts and Procedural History

The essential facts relevant to our review are undisputed. On September 3, 1991, while visiting her grandmother in Kentucky, two-year-old A.F. was bitten by a dog and suffered severe facial injuries. Wendy and her husband, John Franklin ("John," collectively referred to as "the Franklins"), then residents of Virginia, retained Virginia attorneys, who in turn hired attorneys in Kentucky, to initiate a personal injury action. The grandmother's homeowners insurance company settled the claim for $90,000 in 1995, at which

---

1. Oral argument in this case was heard on October 27, 1999, in Indianapolis. We commend both parties for the superior quality of both their written and oral presentations.

2. Although A.F.'s full name appears on the appellate briefs and on other documents of record in this case, we have chosen to follow our policy of referring to minors by their initials.

time the Franklins were residents of Vincennes, Indiana.

To facilitate the settlement process, Wendy hired Vincennes attorney and Knox County prosecuting attorney Bradley Catt ("Catt") to obtain a guardianship for A.F. and to secure court approval of the settlement, with the money to be placed in a court-protected account. At Wendy's request, her Virginia attorneys forwarded the settlement funds to the Knox County clerk ("the clerk"), who deposited the funds into the clerk's trust account. On October 19, 1995, the Knox Circuit Court approved the $90,000 settlement "for the support, care and education" of A.F. and ordered that "no expenditures [ ] be made without the approval of the Court and that said sums [ ] be placed in a Court protected account." On November 20, 1995, in addition to approving payment of expenses, the court ordered that $57,833.39 of the settlement funds be disbursed to Citizens, "to be placed in a protected account" per its order approving the settlement.[3]

On November 21, 1995, Knox County deputy clerk Terry Kaiser ("Kaiser") issued a check made payable to "Citizens Bank" for $57,833.39. A.F. was listed as the sole obligee on the check's detachable stub, but the check did not bear any indication that it was to be placed in a court-protected account. Kaiser gave the check to Catt, who subsequently presented the check and a deposit ticket to Citizens teller Joann Like ("Like") at the bank's drive-through window; the deposit ticket bore the preprinted designation "BRADLEY J. CATT TRUST ACCOUNT." At the time of the deposit, Citizens had no knowledge of either the existence or the content of the court's orders approving the settlement and requiring the establishment of the court-protected account. Like deposited the check into Catt's trust account; at trial, Like did not remember whether the detachable stub bearing A.F.'s name was attached to the check at the time of deposit. Catt later stole the $57,833.39 from the account and was eventually prosecuted for the theft.[4] Wendy did not discover that the clerk's office had actually received the $90,000 in settlement funds until after Catt had stolen the money.

On March 13, 1997, Wendy sued Knox County clerk Lisa Clark Benock ("Benock")[5] and the Board of Commissioners of Knox County ("the Board").[6] On September 23, 1997, Citizens filed a motion to dismiss Wendy's complaint, which was granted by the trial court on October 27, 1997. Wendy filed an amended complaint against Citizens on November 10, 1997, alleging that "the [B]ank owed a duty to ascertain the true intent of the clerk and to pay the money to the intended payee," and that "[t]he [B]ank violated its duties to exercise ordinary care and to act in a commercially reasonable manner." Citizens filed its answer and affirmative defenses to the amended complaint on May 1, 1998.

3. Neither of the court orders contained any instructions regarding the establishment of the court-protected account.

4. On March 26, 1997, Catt was charged with three counts of forgery, a Class C felony; fourteen counts of theft, all as Class D felonies; and one count of filing a fraudulent campaign report, a Class D felony. On August 7, 1997, Catt pled guilty to all counts of forgery and theft, and the fraudulent filing charge was dismissed. On December 19, 1997, the trial court sentenced Catt on all counts and ordered him to pay restitution to several victims, including approximately $57,-000 to the Franklin guardianship; however, the trial court appointed counsel to pursue Catt's criminal appeal because of his indigency.

5. The surname of the Knox County clerk is variously referred to as "Clark/Benock," "Clark–Benock," and "Clark Benock" throughout the record.

6. From what we can discern from the chronological case summary, Wendy filed an amended complaint on August 19, 1997, in which she may have added Citizens as a named defendant; on September 4, 1997, two attorneys filed their appearances on behalf of Citizens.

On July 30, 1998, Citizens filed a motion for summary judgment, in which it argued that Wendy had no standing to bring a claim against Citizens because she never took delivery of the check; that Citizens owed her no duty; that Citizens' actions were lawful; and that only Benock and Catt had engaged in allegedly wrongful conduct. The trial court denied Citizens' motion on October 13, 1998. Wendy settled with Benock and the Board for $10,000 shortly before her jury trial against Citizens on November 23–24, 1998. On November 24, 1998, the jury found in favor of Citizens, and the trial court entered its judgment on that date. Wendy filed a motion to correct error on December 23, 1998, which was denied by the trial court on January 15, 1999, giving rise to the instant appeal.

## Discussion and Decision

### I. Standard of Review

"When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court," and "[w]e resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the non-moving party." *Morton v. Moss,* 694 N.E.2d 1148, 1151 (Ind.Ct.App.1998). "Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). A fact is considered material for the purpose of a summary judgment ruling "only when its existence facilitates resolution of any of the issues involved." *Id.* "[A] defendant is entitled to judgment as a matter of law when undisputed material facts negate at least one element of plaintiff's claim." *Colen v. Pride Vending Service,* 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995),

*trans. denied* (1996). We must determine whether a genuine issue of material fact exists and whether the trial court has correctly applied the law. *Id.* As the party appealing the denial of summary judgment, Citizens bears the burden of persuading us that the trial court erred. *See Morton,* 694 N.E.2d at 1151.

### II. Elements of Negligence Claim

■ The elements of a negligence claim are well settled:

> To recover in negligence, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. Absent a duty, there can be no breach and, therefore, no recovery for the plaintiff in negligence. Our supreme court has held that in determining whether a defendant owed a duty to the plaintiff, we must consider and balance three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). Whether the law recognizes an obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is generally a question of law for the court.

*Ebbinghouse v. FirstFleet, Inc.,* 693 N.E.2d 644, 647 (Ind.Ct.App.1998), *trans. denied* (citations omitted). "A duty in negligence may arise by statute or by operation of law." *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 938 (Ind.Ct.App.1996).[7] When

---

7. In her amended complaint and in response to Citizens' motion for summary judgment, Wendy relied on IND.CODE § 26–1–3.1–110(a), which reads in relevant part,

> The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, sign-

ing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.

found to exist, the duty is to exercise reasonable care under the circumstances, and this duty never changes. *Stump v. Indiana Equipment Co., Inc.*, 601 N.E.2d 398, 402 (Ind.Ct.App.1992), *trans. denied* (1993). "However, the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." *Id.* Although summary judgment is rarely appropriate in a negligence action, "it may be suitable to determine the legal question of whether a duty exists." *Indiana Bell Telephone Co. v. Maynard*, 705 N.E.2d 513, 514 (Ind.Ct.App. 1999), *trans. denied.*[8]

■ "Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. The duty of reasonable care is not owed to the world at large but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Ebbinghouse*, 693 N.E.2d at 648. "Such foreseeability does not mean that the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might occur." *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1382 (Ind.Ct.App.1996), *trans. denied* (1999). In *Goldsberry v. Grubbs*, 672 N.E.2d 475, 478–79 (Ind.Ct. App.1996), *trans. denied* (1999), we distinguished between the "foreseeability component of the duty analysis and the foreseeability component of proximate cause":

Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. . . .

By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

(Citations omitted.)

■ Although Citizens' summary judgment motion does not address the issue of foreseeability with respect to duty, the relevant facts contained therein clearly establish that the type of plaintiff and the type of harm involved in the instant case were

Wendy asserted that the intended payee of the check was her daughter, A.F., and that Citizens breached its duty to exercise ordinary care (i.e., to observe "reasonable commercial standards") by failing to "ascertain the true intent of the clerk and to pay the money to the intended payee." *See* Ind.Code § 26–1–3.1–103(7). Assuming, without deciding, that Citizens unjustifiably violated a statutory duty to exercise ordinary care, we note that although "[a] non-excused or non-justified violation of a duty dictated by statute . . . is negligence *per se*," it does not necessarily follow that there is liability per se. *Dawson by Dawson v. Long*, 546 N.E.2d 1265, 1268–69 (Ind.Ct.App.1989), *trans. denied* (1990) (underlined emphasis supplied). "The violation of a statutory duty

is not actionable negligence unless it is also the proximate cause of the injury." *Id.* at 1269. Because we conclude as a matter of law that Citizens was not the proximate cause of A.F.'s injury, we need not address this matter further.

8. Because we conclude as a matter of law that *Citizens* did not proximately cause A.F.'s injury, we need not consider the relationship between the parties or relevant public policy concerns with respect to determining the existence of a duty in this case, nor must we balance them against the relationship and foreseeability factors discussed above in the context of *Ebbinghouse*.

not reasonably foreseeable. Unlike the plaintiffs in the cases cited by Wendy in support of her position,[9] she was neither the drawer nor the assignee of the drawer of the check at issue, nor did she claim that Catt was acting as her agent at the time he presented the check for deposit; on the contrary, Wendy argued that Catt acted as an agent of the *clerk* in delivering the check to the Bank. Agency considerations notwithstanding, we reiterate our conclusion that the theft of the proceeds was not a reasonably foreseeable harm, nor was the harm suffered by a reasonably foreseeable victim.

 We reach the same conclusion regarding foreseeability with respect to the issue of proximate cause, which is an essential element of a negligence claim. *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 706 (Ind.Ct.App.1999).

> A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. The question of causation is usually inappropriate for summary disposition because it often requires a weighing of disputed facts. Ordinarily, the issue of proximate cause is a question for the jury and is not properly resolved by summary judgment. *Wolfe v. Stork RMS–Protecon, Inc.,* 683 N.E.2d 264, 268 (Ind.Ct.App.1997).

> Where harmful consequences are brought about by intervening and independent forces which were not reasonably foreseeable at the time of the defendant's conduct, the chain of causation is broken and the intervening cause may serve to cut off the defendant's liability. As noted above, ordinarily, the issue of proximate cause is not properly resolved by summary judgment. However, where the injuries could not, as a matter of law, have been reasonably foreseen due to the unforeseeability of an intervening, superseding cause, summary judgment may appropriately be entered in favor of the defendant. *Wolfe,* 683 N.E.2d at 268.[10]

*Id.* (citations omitted).

> The policy underlying proximate cause is that we, as a society, only assign legal

9. *See Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 936–37 (1978) (drawer of checks altered by drawer's employee sued payee bank for negligence, among other claims; court found non-statutory duty of inquiry):

> We agree that an attempt by a third party to divert the proceeds of a check drawn payable to the order of a bank to the benefit of one other than the drawer or drawee suggests a possible misappropriation.... We are not persuaded that commerce will be so impeded by a duty of inquiry in this context that we should depart from the fundamental principle that actors are liable for reasonably foreseeable losses occasioned by their conduct. The duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit. Moreover, the bank's obligation is minimal. We hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at its peril.

> *See also PWA Farms, Inc. v. North Platte State Bank,* 220 Neb. 516, 371 N.W.2d 102, 105 (1985) (citing *Sun 'n Sand;* assignee of drawer of check sued payee bank for conversion and negligent misapplication of proceeds of check):

> By using a bank's name as the payee of the check, a drawer is intending to place the proceeds in the bank's custody and under its control, and nothing may be inferred from the language of the check.... It is a well-established rule that when a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment.

10. In *Wolfe,* we recognized that although "the doctrine of intervening cause had been incorporated into our comparative fault system" as

responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. Stated another way, proximate cause sets the parameters in which an actor "can expect the law to provide by way of protection to his activity."

*Straley v. Kimberly,* 687 N.E.2d 360, 364 (Ind.Ct.App.1997), *trans. denied* (1998) (citations omitted).

As we stated in *Goldsberry,* "when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred." 672 N.E.2d at 479. The undisputed facts lead but to one inescapable conclusion: "that the reason why [A.F.] does not have her $57,833.29 is because her attorney, Bradley Catt, stole the money intended for her." Even assuming, *arguendo,* that Citizens failed to exercise reasonable care in depositing the clerk's check into Catt's trust account, it could not have reasonably foreseen that he would callously and contemptibly breach numerous legal, ethical, and moral obligations to his client by stealing and ultimately squandering the proceeds that were intended to pay for A.F.'s future reconstructive surgeries. As we stated under different factual circumstances in *Indiana Insurance Co. v. Margotte,* 718 N.E.2d 1226, 1230 (Ind.Ct.App.1999), in which appellees were also the unfortunate victims of Catt's shameless thievery, our compassion for Wendy and her daughter "cannot serve as a basis for granting them relief against" Citizens in the absence of the essential elements of duty and proximate cause.[11]

Reversed and remanded for entry of summary judgment in favor of Citizens.

KIRSCH and DARDEN, JJ., concur.

stated in *L.K.I. Holdings, Inc. v. Tyner,* 658 N.E.2d 111 (Ind.Ct.App.1995), *trans. denied* (1996), in cases where (as here) a plaintiff's injuries could not have been reasonably foreseen as a matter of law "due to the unforeseeability of an intervening, superseding cause," entry of summary judgment in favor of the defendant is proper. 683 N.E.2d at 268–69, n. 1.

11. Our decision in this case, based strictly on the absence of a foreseeable harm to a fore-

seeable plaintiff, should not be construed as a license for similarly unscrupulous behavior by fiduciaries or for the careless handling of negotiable instruments by financial institutions. Although her chances for recovery may be remote, Franklin can still seek indemnification from Catt, and banks may not be able to avoid liability for conducting similar transactions under different factual circumstances.