The CITY OF INDIANAPOLIS HOUSING AUTHORITY d/b/a Eagle Creek Village Apartments, Appellant–Defendant,

v.

Anthony PIPPIN and Darlene Pippin, As Surviving Parents and Natural Guardians of Angela Michelle Pippin, a Deceased Minor, Appellees–Plaintiffs.

No. 49A02–9905–CV–379.

Court of Appeals of Indiana.

March 23, 2000.

misled him or altered the preparation of his defense. The argument is thus unconvincing.

Julia Blackwell Gelinas, Thomas J. Campbell, Locke Reynolds LLP, Indianapolis, Indiana, Attorneys for Appellant.

Paul D. Ludwig, Tom Blackburn, Cohen & Malad P.C., Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

The City of Indianapolis Housing Authority d/b/a Eagle Creek Village Apartments (Housing Authority) appeals the judgment of the trial court on the claim of Anthony and Darlene Pippin. It raises the following issues for review:

I. Whether the trial court erred in failing to grant the Housing Authority's motion for summary judgment.

II. Whether the trial court erred in failing to grant the Housing Authority's motion for judgment on the evidence.

III. Whether the trial court erred in failing to strike portions of Darlene Pippin's affidavit.

IV. Whether the trial court erred in refusing the Housing Authority's tendered instruction about hidden defects.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 26, 1994, fourteen-year-old Angela Pippin was playing basketball with some friends at a portable basketball goal in an area paved for vehicular traffic in the parking lot of Eagle Creek Village Apartments. Around 4:40 P.M., twelve-year-old Dejuan Adams used a screwdriver to start a stolen, abandoned vehicle. He accelerated in reverse, lost control, and struck several children, including Angela. Angela died from her injuries.

The Pippins brought suit against the Housing Authority alleging that it was negligent in failing to provide a safe area for the resident children to play and in failing to rectify the persistent problem of stolen vehicles being abandoned on the property. The Housing Authority moved for summary judgment, alleging that the Pippins could not establish as a matter of law that the Housing Authority owed a duty to Angela or that its actions proximately caused her death. The trial court denied this motion. The case was tried to a jury. At the conclusion of the Pippins' case, the Housing Authority moved for judgment on the evidence, which the trial court denied. The jury awarded the Pippins $163,000 in damages. The Housing Authority now appeals.

## DISCUSSION AND DECISION

### I. Motion for Summary Judgment

The Housing Authority first argues that the trial court erred in denying its motion for summary judgment. It argues that the Pippins failed to establish as a matter of law that the Housing Authority either owed a duty to Angela or that its actions proximately caused her injury. When reviewing the denial of a motion for summary judgment, we use the same standard as the trial court. *Stevens v. Olsen,* 713 N.E.2d 889, 891 (Ind.Ct.App.1999), *trans. denied.* We determine whether the record reveals a genuine issue of material fact and whether the trial court correctly ap-

plied the law. *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App.1996), *trans. denied.* We may not search the entire record to support the judgment, but may only consider that evidence which was specifically designated to the trial court. *J.C. Spence & Assoc., Inc. v. Geary,* 712 N.E.2d 1099, 1102 (Ind.Ct.App.1999) (quoting *City of New Haven v. Chemical Waste Management of Indiana, L.L.C.,* 701 N.E.2d 912, 922 (Ind.Ct.App.1998), *trans. denied* (1999)). We carefully scrutinize the pleadings and designated materials, construing them in a light most favorable to the non-movant. *Diversified Financial Sys., Inc. v. Miner,* 713 N.E.2d 293, 297 (Ind.Ct.App. 1999).

A trial court's decision on a motion for summary judgment is clothed with a presumption of validity. *Id.* The party appealing the trial court's decision on summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Irvine v. Rare Feline Breeding Ctr., Inc.,* 685 N.E.2d 120, 123 (Ind.Ct.App.1997), *trans. denied* (1998). We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence. *Ashcraft v. Northeast Sullivan County Sch. Corp.,* 706 N.E.2d 1101, 1103 (Ind.Ct.App.1999).

 The tort of negligence is comprised of three elements: 1) a duty on the part of the defendant in relation to the plaintiff; 2) a failure by the defendant to conform its conduct to the requisite standard of care; and 3) an injury to the plaintiff caused by the failure. *Fawley v. Martin's Supermarkets, Inc.,* 618 N.E.2d 10, 12 (Ind.Ct.App.1993), *trans. denied.* To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Ashcraft,* 706 N.E.2d at 1103. The Housing Authority claims that the undisputed facts negate

both the duty and proximate cause elements.

## A. Duty

 Whether a duty to exercise care arises is governed by the relationship between the parties and is an issue of law. *Fawley,* 618 N.E.2d at 12. Absent a duty owed to a plaintiff by the defendant, there can be no actionable negligence. *Id.* When found to exist, the duty is to exercise reasonable care under the circumstances, and this duty never changes. *Franklin v. Benock,* 722 N.E.2d 874, 878 (Ind.Ct.App.2000). However, the standard of conduct required to meet that duty varies based on the circumstances. *Id.* (quoting *Stump v. Indiana Equip. Co.,* 601 N.E.2d 398, 402 (Ind.Ct.App.1992), *trans. denied* (1993)). To determine whether a duty exists in a particular case, we balance three factors: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured; and 3) public policy concerns. *Goldsberry v. Grubbs,* 672 N.E.2d 475, 478 (Ind.Ct.App. 1996), *trans. denied* (1999) (citing *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991)). We now turn to these three factors.

### 1. Relationship Between the Parties

 The parties do not dispute that Angela Pippin was a resident and tenant of the Housing Authority. Her family had lived at Eagle Creek Village for about four years prior to the accident that caused her death. Thus, the parties had a landlord-tenant relationship. Generally, a landlord has a duty of reasonable care to see that the common areas or areas under his control are reasonably fit. *Flott v. Cates,* 528 N.E.2d 847, 848 (Ind.Ct.App.1988); *Hodge v. Nor–Cen, Inc.,* 527 N.E.2d 1157, 1160 (Ind.Ct.App.1988), *trans. denied* (1989); *Rossow v. Jones,* 404 N.E.2d 12, 14 (Ind. Ct.App.1980). This factor weighs in favor of imposing a duty on the Housing Authority under these circumstances.

### 2. Foreseeability of Harm

 The foreseeability component of duty requires a general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence. *Goldsberry*, 672 N.E.2d at 479. As we have stated previously, "In this regard, we must 'examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.'" *Wickey v. Sparks*, 642 N.E.2d 262, 267 (Ind.Ct.App.1994), *trans. denied* (1995)(quoting *Webb*, 575 N.E.2d at 997). The duty of reasonable care is not owed to the world at large, but is limited to those who might reasonably be foreseen as being subject to injury by a breach of the duty. *Franklin*, 722 N.E.2d at 879. Foreseeability does not mean that the exact hazard or precise consequence should have been foreseen, but it also does not encompass anything that might occur. *Id.* (quoting *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1382 (Ind.Ct.App.1996), *trans. denied* (1999)).

The Housing Authority maintains that Adams' conduct in starting a stolen car and losing control of it were unforeseeable. The Housing Authority's view of the plaintiff and harm here is too cramped. The type of plaintiff harmed was a child injured while playing basketball at a basketball goal placed in an area designed for vehicular traffic. The child was injured when a vehicle struck her, killing her. It does not stretch the imagination to envision that a child playing in an area designed for and used by vehicles might be struck and injured by a vehicle. Indeed, even very young children can appreciate the dangers moving vehicles pose to pedestrians. The victim and the harm were foreseeable in this case. This factor weighs in favor of imposing a duty.

### 3. Public Policy

Finally, we weigh the policy implications of imposing a duty here. Such a duty would require all multi-family housing complexes to consider the safety of the areas in which resident children play. We believe this is a sound practice that should be encouraged. Apartment managers should not stand by silently while allowing a known, dangerous condition, like children playing in a parking lot, to continue. Moreover, it is incumbent upon those complexes receiving monetary subsidies from the United States Department of Housing and Urban Development to do so. The HUD handbook requires complexes to provide outdoor recreation areas and provides that: "[p]lay areas shall have sufficient barriers from streets, trafficked areas, or other hazardous areas that are unsafe or prevent enjoyable use of the areas." *Record* at 94.

The area in question, the parking lot, is designed to accommodate the vehicles and traffic of many families and is clearly a common area under the landlord's control. Thus, imposing a duty in this case is consistent with the existing duty of landlords to tenants. We conclude that public policy also weighs in favor of imposing a duty here.

Because all three factors weigh in favor of imposing a duty in this case, we hold that as a matter of law, the Housing Authority had a duty to Angela Pippin to take reasonable care to insure that she would not be injured by moving vehicles while she played. The trial court did not err in refusing to grant summary judgment on this basis.

### B. Proximate Cause

 The proximate cause of an injury is not merely the direct or close cause, rather it is the negligent act which resulted in an injury which was the act's natural and probable consequence in light of the circumstances and should reasonably have been foreseen and anticipated. *Lutheran Hosp. of Indiana, Inc. v. Blaser*, 634 N.E.2d 864, 871 (Ind.Ct.App.1994). There may be more than one proximate cause of an event. *Board of Comm'rs of*

*Adams County v. Price*, 587 N.E.2d 1326, 1333 (Ind.Ct.App.1992), *trans. denied.* The underlying policy is that society only assigns legal responsibility to those whose acts are closely connected to the resulting injuries, such that the imposition of liability is justified. *Franklin*, 722 N.E.2d at 880.

▆▆▆▆ Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. *Goldsberry*, 672 N.E.2d at 479. The Housing Authority argues that the accident that killed Angela Pippin was not foreseeable because such accidents had not happened in the past and it was not on notice that such accidents could occur. However, proximate cause is a question of fact for the jury to determine unless only one conclusion can be drawn from the facts. *Williams v. Indiana Dep't of Corrections*, 702 N.E.2d 1117, 1120 (Ind. Ct.App.1998). In this case, the Pippins presented evidence of the Housing Authority's role in the accident that killed Angela Pippin. The Pippins' designated evidence included the Housing Authority's admissions that: 1) it had control over the operation and maintenance of the common areas of Eagle Creek Village Apartments, including the parking lots and playground areas; 2) management knew that the basketball goal was in a paved area prior to the accident; and 3) the basketball goal had been present for several months before the accident.

This is not a case where all of the facts and inferences led only to the conclusion that the Housing Authority's conduct was not a proximate cause of Angela Pippin's death. Thus, whether its conduct was a proximate cause of her death was an issue that was appropriately left to the jury. The Housing Authority was not entitled to summary judgment on the issue of proximate cause.

## II. Motion for Judgment on the Evidence

▆▆▆▆ The Housing Authority next contends that the trial court erred in denying its motion for judgment on the evidence. The denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Zemco Mfg., Inc. v. Pecoraro*, 703 N.E.2d 1064, 1071 (Ind.Ct.App.1998), *trans. denied* (1999). When we review a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court, considering only the evidence and reasonable inferences most favorable to the nonmoving party. *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind.Ct.App.1999), *trans. denied*. The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Zemco Mfg.*, 703 N.E.2d at 1071. Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *City of Fort Wayne*, 706 N.E.2d at 607.

▆▆▆▆ The Housing Authority contends that the Pippins presented no evidence to establish the foreseeability of the accident that killed Angela Pippin and therefore, did not establish either that it owed her a duty or that its actions were the proximate cause of her death. In advancing this argument, the Housing Authority focuses on the fact that an unlicensed juvenile attempted to steal an abandoned car. Again, the Housing Authority misses the point. The issue is not whether the Housing Authority could foresee that Adams would start a stolen car with a screwdriver and strike people by operating it in an erratic manner. Instead, the issue is whether a child playing in an area paved for vehicular traffic could be struck by any vehicle. The Pippins presented sufficient evidence to establish that this consequence was foreseeable. In addition to the admissions of the Housing Authority, the Pippins presented the testimony of Clinton Hutchcraft, an architectural expert, who testified that mixing play areas and vehicle

traffic areas creates an unacceptable conflict that puts participants at risk of injury from vehicles. He also testified that people driving too fast in apartment complex parking lots was a common problem. This testimony was sufficient to withstand the Housing Authority's motion for judgment on the evidence. The trial court did not err.

### III. Motion to Strike

The Housing Authority next maintains that the trial court erred in denying its motion to strike portions of Darlene Pippin's affidavit, which was filed in support of the Pippins' opposition to the Housing Authority's motion for summary judgment. Specifically, it argues that portions of her affidavit were not within her personal knowledge, were conclusory, and impermissibly attacked the credibility of another affiant. The challenged portions of the affidavit read:

> "5. That your affiant and other residents of the apartment complex repeatedly complained of the lack of a safe play area for the children of the apartment complex residents, which management, in the person of Coleman Clay, Community Manager, promised to address and improve but which promises were not kept.
>
> 6. That prior to the death of Angela Pippin, several children playing around the basketball goal where Angela Pippin was killed were nearly struck by automobiles being driven through the apartment.
>
> 7. That the presence of the abandoned automobile which struck and killed Angela Michelle Pippin was reported to the management of the apartment complex several hours [sic] to its striking and killing Angela Michelle Pippin.
>
> . . .
>
> 9. Melvin Jackson was never a manager of the Eagle Creek Village Apartments and would not have received the report of the abandoned automobile. Concord Village Apartments are several miles from Eagle Creek Village Apartments."

*Record* at 116–17.

This court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Richardson v. Calderon*, 713 N.E.2d 856, 860 (Ind. Ct.App.1999), *trans. denied* (2000)(citing *Ford v. State*, 704 N.E.2d 457 (Ind.1998); *Zemco Mfg.*, 703 N.E.2d at 1064). We will reverse the trial court's decision only when it is clearly against the logic and effects of the facts and circumstances. *Id.* Trial Rule 56(E) governs affidavits in support of or in opposition to a motion for summary judgment. It states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Ind. Trial Rule 56(E).

While we believe that much of the challenged material are statements of fact within Darlene Pippin's personal knowledge, even if the failure to strike was error, it does not provide grounds for reversal of the judgment against the Housing Authority. We may not reverse a trial court's decision absent a showing of prejudice. *Neese v. Kelley*, 705 N.E.2d 1047, 1050 (Ind.Ct.App.1999). The complaining party has the burden of showing actual prejudice. *Id.* In this case, there was no prejudice. The Pippins presented sufficient evidence aside from Darlene Pippin's affidavit to withstand the Housing Authority's motion for summary judgment. In addition to the affidavit, they presented the admissions of the Housing Authority that it had control of the parking lot area and knew of the basketball goal, which had been in the same location for several months prior to the accident. This was sufficient to withstand the Housing Authority's motion for summary judgment. Thus, Darlene Pippin's affidavit was superfluous and the trial court's refusal to strike

portions of it was harmless error, if error at all.

### IV. Jury Instruction

■■■■ · Finally, the Housing Authority contends that the trial court erred in refusing its tendered instruction regarding a landlord's responsibility for hidden defects. The purpose of instructions is to guide the jury in the application of correct principles of law to the facts of the case before them. *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991). In reviewing the refusal of tendered instructions, we must determine whether: 1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction; and 3) the substance of the instruction is covered by other instructions. *Hoosier Ins. Co. v. North South Trucking Supplies, Inc.,* 684 N.E.2d 1164, 1173 (Ind.Ct. App.1997).

■■■■ The giving of jury instructions is a matter primarily entrusted to the discretion of the trial court. *Underly v. Advance Mach. Co.,* 605 N.E.2d 1186, 1190 (Ind.Ct.App.1993), *trans. denied.* However, a party is entitled to have his theory of the case and the applicable law properly presented to the jury in the instructions. *Peak,* 578 N.E.2d at 361. Thus, a trial court should not refuse a tendered instruction if the three requirements set out above are met. *Peak,* 578 N.E.2d at 361. Nonetheless, instructional errors which do not prejudice the substantial rights of the defendant do not require reversal. *Lutheran Hospital,* 634 N.E.2d at 871.

Housing Authority's tendered instruction read:

"A landlord who knows of a hidden defect of which the tenant is ignorant has a duty to give the tenant notice of such defect, and the landlord is liable for injuries caused by the failure to do so. The landlord, however, is not liable for injuries sustained by the tenant where the defect was hidden and unknown to the landlord or one that the tenant could have discovered by the exercise of reasonable care."

*Record* at 165.

■■■■ The trial court's refusal to give this instruction was not error. because it was not supported by the evidence in the Record. The defect at issue was the placement of the basketball goal in the parking lot area. The management of Eagle Creek Village Apartments was aware of this condition. Thus, the instruction about hidden defects was inapplicable. The Housing Authority argues that the defect at issue here was the presence of stolen, abandoned cars. However, the same harm could have occurred to Angela Pippin regardless of whether the car was stolen and operated by an unlicensed, underage driver or operated by its lawful owner. Her injury was not caused by a hidden defect and the trial court did not err in refusing to give this instruction.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.